# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

_____

TERRIE DIGNEAN, AS
ADMINISTRATRIX OF THE ESTATE OF
MILES DIGNEAN

          Plaintiff,

vs.

OSWEGO COUNTY, SHERIFF DON
HILTON, *in his individual capacity*, DEPUTY
SHERIFF COREY WHITNEY, *in his
individual capacity*, DEPUTY SHERIFF
CHARLES COSTELLO, *in his individual
capacity*, NEW YORK STATE POLICE,
NEW YORK STATE TROOPER JUNYLA
SABARI, *in her individual capacity* AND
DOE OFFICERS 1-10,

          Defendants.

**Civil Action No.:  5:26-cv-00155-AJB-MJK**
**FIRST AMENDED COMPLAINT**
**A. FEDERAL CLAIMS**
1. **VIOLATION OF CIVIL RIGHTS EXCESSIVE FORCE (42 U.S.C. § 1983);**
2. **VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983) FAILURE TO INTERCEDE;**
3. **VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983) DELIBERATE INDIFFERENCE TO MEDICAL NEEDS;**
4. **FOURTEENTH AMENDMENT OF U.S. CONSTITUTION-LIBERTY INTEREST (42 U.S.C. § 1983);**
5. **MONELL CLAIM AGAINST OSWEGO COUNTY(42 U.S.C. § 1983);**
6. **NEGLIGENT HIRING, TRAINING, SUPERVISION AND RETENTION (42 U.S.C. § 1986)**

**B. STATE CLAIMS**
7. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**
8. **NEGLIGENT TRAINING, DISCIPLINE, RETENTION AND SUPERVISION;**
9. **ASSAULT & BATTERY**
10. **FALSE IMPRISONMENT**
11. **WRONGFUL DEATH;**
12. **PUNITIVE DAMAGES AGAINST DEPUTY SHERIFF COREY WHITNEY, IN HIS INDIVIDUAL CAPACITY;**
13. **RESPONDEAT SUPERIOR LIABILITY OF OSWEGO COUNTY;**

**JURY TRIAL DEMANDED**

## I. INTRODUCTION

1. Plaintiff, Terrie Dignean, as Administratrix of the Estate of Miles Dignean, brings this action to vindicate her deceased son's statutorily and constitutionally protected civil rights. The action is based on Defendant Oswego County and individual Deputy Sheriff Corey Whitney's application of excessive force that caused the death of Plaintiff's son, Miles Dignean.

2. Plaintiff, Terrie Dignean as Administratrix for the Estate of her deceased son, Miles Dignean by her attorney, Jesse P. Ryder, Esq., allege damages and civil rights violations as reflected by the following facts, as both factual and upon information and belief.

## II. PARTIES

3. Plaintiff, Terrie Dignean (Terrie), as Administratrix of the Estate of Miles Dignean ("Estate"), is a resident of Bernhards Bay, Oswego County, and State of New York.

4. Miles Dignean ("Miles"), at the time of his death was a citizen of the United States and a resident of Bernhards Bay, Oswego County, and State of New York.

5. Defendant, Don Hilton ("Hilton") is a "Person" employed by Defendant Oswego County as its Sheriff.

6. Defendant, Corey Whitney ("Whitney") is a "Person" employed by Defendant Oswego County as a Sheriff's Deputy.

7. Defendant, Charles Costello ("Costello") is a "Person" employed by Defendant Oswego County as a Sheriff's Deputy.

8. Defendant Oswego County is a governmental organization of the State of New York.

9. Defendant, Junyla Sabari ("Sabari") is a "Person" employed by Defendant New York State Police as a Trooper.

10. Defendant New York State Police is a governmental organization of the State of New York.

### III. DOE DEFENDANTS

11. Plaintiff does not know the true names and capacities, whether individual, corporate, associate, or otherwise of Defendant DOE Officers 1 through 10 inclusive, and therefore sue these Defendants by such fictitious names. Plaintiff will amend their complaint to allege their true names and capacities when this has been ascertained.

### IV. RESPONDEAT SUPERIOR

12. Plaintiff, Terrie Dignean, as Administratrix of the Estate of Miles Dignean, claims that Oswego County and New York State Police are liable under the theory of respondeat superior for Defendant Sheriff Deputies, New York State Trooper, and DOE Officer's excessive force, assault, battery and wrongful death of decedent, and thereby liability attaches to Plaintiff, Terrie Dignean, as Administratrix of the Estate of Miles Dignean, for Plaintiff's federal constitutional rights and violations of state law. Municipalities may be held vicariously liable for state law torts committed by police officers under a theory of respondeat superior. See *Williams v. Village of White Plains,* 718 F. Supp. 2d 374, 381 (S.D.N.Y. 2010). Therefore, the respondeat superior claim against Oswego County and New York State Police regarding Defendants, Corey Whitney, Charles Costello, Junyla Sabari, and DOE Officers is a valid claim, establishing liability against Oswego County and New York State Police.

### V. EXHAUSTION OF ADMINISTRATIVE REMEDIES

***Notice of Claim (GML 50-E)***

13. Plaintiff has complied with all conditions precedent, including the filing of a Notice of Claim under General Municipal Law § 50-e, as a condition precedent to state law causes of action.

**FIRST AMENDED COMPLAINT**- 3 -

Such notice of claim is inapplicable to Plaintiff's federal claims pursuant to 42. U.S.C. §1983. A notice of claim is not a condition precedent to a cause of action, asserted pursuant to 42 USC § 1983, which seeks to recover damages premised on violations of federal civil or constitutional rights under color of state law.

### *Estate of Miles Dignean*

14. On December 19, 2025, the Surrogate's Court of Oswego County appointed Terrie Dignean, who is the mother of Miles Dignean, as Administratrix of the Estate of Miles Dignean, thereby empowering her to bring this action.

## VI. JURISDICTION

15. This Court has jurisdiction over the following claims as such arise under 42  U.S.C. § 1983 and assert facts showing that Defendants, and each of them, acted willfully, deliberately and pursuant to a policy, custom and practice, and with reckless disregard of Plaintiff, Terrie Dignean, as Administratrix of the Estate of Miles Dignean's established federal constitutional rights and state constitutional rights. Jurisdiction also lies pursuant to 28 U.S.C. 1367 for Plaintiff's supplemental state law claims.

## VII. VENUE

16. Venue is proper in this district under 28 U.S. C. § 1391 (b) (1) because Defendants reside in this district and Plaintiff resides in Bernhards Bay, New York. Venue is also proper in this district under 28 U.S.C § 1391 (b) (2) because the events, acts and omissions giving rise to this claim occurred in this district.

## VIII. STATEMENT OF FACTS

17. The claims arise from the shooting death of Miles by Whitney on March 21, 2025.

18. As a child, Miles suffered a severe head injury from a motorcycle accident which resulted in cognitive and emotional deficiencies.

19. Despite his disabilities, Miles was able to live a fulfilling life and worked full-time in construction and supported his minor child, R.D.

20. On or about January 16, 2025, Miles' family was concerned for his safety and welfare due to their observation that he had been displaying behavioral issues due to his disabilities, so they reached out to the Oswego County Sheriff's Department for assistance. On or about that date, two Oswego County Sheriff Deputies responded and arrived at the home of Miles' parents, where Miles was present.

21. After the Deputies arrived, they counseled Miles' parents, Terrie and Alton Dignean, Sr. ("Alton, Sr.") and provided them with a business card for Liberty Resources ("Liberty"), which is a crisis counseling service, and recommended that if they ever experience another incident where Miles displayed any behavioral issues due to his disabilities, that they reach out and coordinate with a counselor and include them so they can assist them and the police by providing professional crisis management. Terrie and Alton, Sr. advised the Oswego County Sheriff's Deputies that they had a plan, with Miles' consent and knowledge, to get Miles into a facility where he could try to address the symptoms he faced due to his childhood head injury.

22. Thereafter, the deputies escorted Miles to his home, which is just around the corner from his parent's home, and at the Oswego County Sheriff Deputies direction, Terrie reached out to Liberty to establish a relationship to ensure that any future incidents whereby the police were needed, a counselor would be involved to protect Miles and assist police achieve their legal mandate to deescalate.

23. At the behest of the Oswego County Sheriff's Department, Terrie initiated a relationship with Liberty and thereafter two counselors came from Liberty to meet with Miles and his family and began to arrange for him to begin receiving counseling for his struggles associated with his brain injury.

24. Thereafter, Terrie and Alton, Sr. were made aware of another crisis management organization operating in the area known as Mobile Crisis. Terrie coordinated with Mobile Crisis and Liberty to ensure that a counselor would be present during any interaction with Miles that had the potential to be stressful.

25. Again, out of concern for Miles' safety, on or about January 17, 2025, Terrie and Alton, Sr. reached out to the New York State Police. Upon the arrival at their home by a New York State Trooper, Terrie and Alton, Sr. notified the Troopers that, at the urging and advice of the Oswego County Sheriff's Department, they had developed a plan to include a counselor in any incidents whereby they needed the assistance of the police involving Miles.

26. Thereafter, Terrie and Alton, Sr. continued working with Miles to arrange counseling for him to explore ways to identify and deal with his disabilities. Miles was in agreement that he would benefit from professional help and he agreed to allow his parents to assist him in finding a facility where he could seek such treatment.

27. Thereafter, in or about March of 2025, Terrie, Alton, Sr., and Miles' ex-girlfriend ("K.N.") and mother of R.D., decided that in order for Miles to successfully participate in a counseling program, K.N. would seek temporary custody of R.D. Thereafter, K.N. sought an amendment to the Joint Custody Order ("Order") for R.D.

28. Miles attended school with Whitney. Upon information and belief, Whitney had a troubled childhood due to family insecurity and difficulties that were well known in the community.

Upon information and belief Miles and Whitney had an adversarial relationship for many years due to Miles' insensitivity towards Whitney's family problems, among other things.

29. Due to her knowledge that Miles would be deprived of time with his child because of the Order, K.N. left R.D. with Miles for the week preceding his shooting death, so he would have extra time with R.D.

30. On or about the evening of March 20, 2025, Whitney personally called K.N. to speak with her and he let her know he was planning to serve the Order upon Miles the following day. K.N. asked Whitney if she should go pick up R.D. ahead of time. She also asked if her and Terrie should be present and advised him that she would also tell Terrie so they could both be present to ensure a smooth interaction. To these requests, Whitney advised K.N. that he did not want anyone there because he expected there would be a violent physical confrontation and he did not want her to get hurt.

31. Feeling unsettled about Whitney's prediction that there would be violence involved with serving the Order the next day, upon terminating their phone call, K.N. promptly called Terrie.

32. Early on the morning of March 21, 2025, Alton Dignean Jr. ("Alton, Jr."), who lived next door to Miles, called his parents to advise them that Whitney was there early that morning alone and was arguing with Miles.

33. Confused about why Whitney was there early that morning, Terrie promptly reached out to Mobile Crisis. Terrie spent approximately two hours on the phone with them the morning of March 21, 2025, coordinating a plan for their arrival and presence during the service of the Order. It was decided that as soon as the Sheriff's Department notified her that they were headed to Miles' house to serve the Order, Terrie would immediately call a counselor who

would promptly head over to assist with her and the police to facilitate the service of the Order and secure custody of R.D.

34. Approximately 1pm on the afternoon of March 21, 2025, Trooper Sabari arrived at Terrie's home. She advised Terrie that she was heading to join Deputies Whitney and Costello at Miles' residence to serve the Order. Terrie then advised Sabari that she had coordinated with Mobile Crisis that morning and they were awaiting her call to send out a counselor to be present during the service of the Order. Terrie then asked Sabari for a moment to call Mobile Crisis and grab her coat so she could join her.

35. Sabari responded by telling Terrie she had no knowledge of who Mobile Crisis was and while Terrie was grabbing her jacket and calling Mobile Crisis, she heard Sabari's police vehicle spin its tires in front of her home and as she looked out the window, she saw Sabari speeding up the street towards Miles' residence.

36. Terrie was confused and unsure what to do at that moment so she persisted with making her call to Mobile Crisis to arrange for them to come to assist her and the police.

37. As Terrie was still at her home waiting for a counselor, she received a phone call from Costello who asked her to come up to Miles' home to take R.D. Terrie quickly got into her vehicle and promptly drove to her son's home.

38. Upon arrival at Miles' residence, Terrie saw Costello sitting on the tailgate of an Oswego County Sheriff's vehicle with R.D. and a number of police officers standing around talking in Miles' garage.

39. As she exited her vehicle, Costello informed her that she needed to take R.D. away from the residence. Terrie asked him what happened to Miles and Costello advised her that Miles was fine.

40. Terrie asked if she could speak to Miles and Costello reassured her that he was fine and instructed her to leave with R.D. Terrie then advised Costello that she was supposed to be there and that, in accordance with the direction of the Oswego County Sheriff's Department, she had a counselor coming to be present with them as they served the Order.

41. Very confused by what was going on, Terrie followed Costello's instructions and took R.D. back to her home. Upon arrival back to her home, Terrie saw multiple emergency vehicles heading past her home and towards Miles' residence.

42. Alarmed by what he was hearing and seeing, Alton Sr. immediately got into his vehicle and went directly to Miles' residence.

43. Terrie summoned a close family friend to watch R.D. and she followed her husband back to Miles' residence.

44. Upon their arrival at Miles' residence, Alton, Sr. and Terrie saw Miles lying on the floor of the garage and witnessed police officers standing over him while one officer was attempting to perform CPR on him.

45. Shocked by what he saw, Alton, Sr. tried to approach his son. Alton Sr. was held back by Costello, who advised him that Miles had been shot during a scuffle with Sabari and that she was injured and had already been taken away by ambulance. Alton, Sr. asked Costello why Miles had not been on the ambulance instead of Sabari and was told that Miles had seemed fine.

46. After about 10-15 minutes a second ambulance appeared on the scene. Alton, Sr. witnessed emergency medical personnel perform CPR on Miles for a time and then load him into the ambulance. As the ambulance left the scene it did not activate its sirens and went slowly away in the wrong direction.

47. Terrie and Alton Sr. then drove back to their residence and then contacted their other family members, got into their vehicle and left for Syracuse to find their son. Upon arrival at the hospital, they were informed their son was deceased.[1]

48. The released clips of the bodycam video by the New York State Attorney General's Office, prior to Costello's initial use of physical force against Miles, Costello, Whitney, and Sabari can be seen luring and pinning Miles and R.D. into the back of their garage and can be heard advising Miles that I have your mother (Terrie) coming up" to assist them. Miles responds by agreeing that he will speak with her and says to Costello. "let's go then." From there, instead of allowing Miles and his child, R.D., to exit the garage and wait to meet with Terrie in the driveway, Costello, Whitney and Sabari move to pin Miles and R.D. in the back of the garage and initiate a physical confrontation, including hand strikes, kicks, knee strikes, deployment of a taser and two gunshots to Miles' back. All while R.D. was screaming for his father and being bumped, grabbed at, and pushed around by the individual officers. Miles can be heard asking Whitney "what the fuck, Corey" as he lie suffering and dying on the floor of his garage for over a half an hour.

49. Due to being so intimately caught up in the shocking, arbitrary, and egregious conduct of these Defendant Officers, R.D. continues to repeat "bang, bang, daddy's belly hurts" and has reverted to urinating and defecating in his clothing, despite already being potty trained. R.D. frequently asks his family members over the phone if his father is there present with them.

---

[1] The New York State Attorney General's Office has released clips of the shooting death of Miles Dignean by Oswego County Sheriff's Deputy Corey Whitney hereto: https://ag.ny.gov/osi/footage/miles-dignean

**FIRST AMENDED COMPLAINT**- 10 -

50. The use of deadly force against Miles is in direct violation of the Oswego County Sheriff's Department Use-of-force Policy.[2] Specifically, Section IV, VII, IX, & XV which state as follows:

IV. DUTY TO INTERCEDE

Any deputy present and observing another deputy using force that is clearly beyond that which is objectively reasonable under the circumstances shall, when in a position to do so, intercede to prevent the use of unreasonable force. A deputy who observes another employee use force that exceeds the degree of force permitted by law should promptly report these observations to a supervisor.

VII. FACTORS USED TO DETERMINE THE REASONABLENESS OF FORCE

When determining whether to apply force and evaluating whether a deputy has used reasonable force, several factors should be taken into consideration, as time and circumstances permit. These factors include but are not limited to:

(a) Immediacy and severity of the threat to deputies or others.
(b) The conduct of the individual being confronted, as reasonably perceived by the deputy at the time.
(c) Deputy/subject factors (e.g., age, size, relative strength, skill level, injuries sustained, level of exhaustion or fatigue, the number of deputies available vs. subjects).
(d) The effects of suspected drug or alcohol use.
(e) The individual's mental state or capacity.
(f) The individual's ability to understand and comply with deputy commands.
(g) Proximity of weapons or dangerous improvised devices.
(h) The degree to which the individual has been effectively restrained and his/her ability to resist despite being restrained.
(i) The availability of other reasonable and feasible options and their possible effectiveness.
(j) Seriousness of the suspected offense or reason for contact with the individual.
(k) Training and experience of the deputy.
(l) Potential for injury to deputies, suspects, and others.
(m) Whether the individual appears to be resisting, attempting to evade arrest by flight, or is attacking the deputy.
(n) The risk and reasonably foreseeable consequences of escape.
(o) The apparent need for immediate control of the individual or a prompt resolution of the situation.
(p) Whether the conduct of the individual being confronted no longer reasonably appears to pose an imminent threat to the deputy or others.
(q) Prior contacts with the individual or awareness of any propensity for violence.
(r) Any other exigent circumstances.

---

[2] https://cms3.revize.com/revize/repository/oswegocountyny/Use%20of%20Force.pdf
Both the Oswego County Sheriff's Department and the New York State Police derive their use-of-force policies from Article 35 of the NYSPL.

IX. DE-ESCALATION

When circumstances reasonably permit, deputies should use non-violent strategies and techniques to decrease the intensity of a situation, improve decision-making, improve communication, reduce the need for force, and increase voluntary compliance (e.g., summoning additional resources, formulating a plan, attempting verbal persuasion).

XV. MEDICAL CONSIDERATIONS

Once it is reasonably safe to do so, medical assistance shall be obtained for any person who exhibits signs of physical distress, has sustained visible injury, expresses a complaint of injury or continuing pain, or was rendered unconscious. Any individual exhibiting signs of physical distress after an encounter should be continuously monitored until he/she can be medically assessed. Individuals should not be placed on their stomachs for an extended period, as this could impair their ability to breathe. Based upon the deputy's initial assessment of the nature and extent of the individual's injuries, medical assistance may consist of examination by an emergency medical services provider or medical personnel at a hospital or jail. If any such individual refuses medical attention, such a refusal shall be fully documented in related reports and, whenever practicable, should be witnessed by another deputy and/or medical personnel. If a recording is made of the contact or an interview with the individual, any refusal should be included in the recording, if possible. The on-scene supervisor or, if the on-scene supervisor is not available, the primary handling deputy shall ensure that any person providing medical care or receiving custody of a person following any use of force is informed that the person was subjected to force. This notification shall include a description of the force used and any other circumstances the deputy reasonably believes would be potential safety or medical risks to the subject (e.g., prolonged struggle, extreme agitation, impaired respiration). Individuals who exhibit extreme agitation, violent irrational behavior accompanied by profuse sweating, extraordinary strength beyond their physical characteristics, and imperviousness to pain (sometimes called "excited delirium"), or who require a protracted physical encounter with multiple deputies to be brought under control, may be at an increased risk of sudden death. Calls involving these persons should be considered medical emergencies. Deputies who reasonably suspect a medical emergency should request medical assistance as soon as practicable and have medical personnel stage away.

51. In direct violation of their own use-of-force policies, Whitney, Costello, and Sabari failed to intervene and stop the other from allowing the situation to turn violent and deadly.

52. In direct violation of their own use-of-force policies, Whitney, Costello, and Sabari rapidly resorted to physical violence during the service of a Family Court Order. Despite clear knowledge of the importance of having Terrie there to assist with Miles and their own

departments knowledge and recommendation that a counselor be present, the Defendant Officers ignored the safety of R.D. and Miles and initiated a physical confrontation with Miles that resulted in Miles' death.

53. In direct violation of their use-of-force policies, Whitney, Costello, and Sabari failed to take steps to deescalate the service of the Family Court Order by having Terrie and a counselor present, as directed by the Oswego County Sheriff's Department and previously made known to Trooper Sabari.

54. In direct violation of their own use-of-force policies, Whitney, Costello, and Sabari failed to provide immediate medical attention to Miles, despite Miles being shot in the back two times. Instead, they allowed Sabari to take the first ambulance while Miles lie dying on his garage floor.

## IX. DAMAGES

55. The damages incurred by Terrie Dignean, as Administratrix of the Estate of Miles Dignean, include, but are not limited to, sustaining and suffering a spectrum of physical, psychological, emotional injuries including conscious pain and suffering, imminent fear of death, nightmares, insomnia, anxiety, post-traumatic stress, mental and emotional distress, humiliation, fear, and discomfort, loss of enjoyment of life, inconvenience, destruction of earning capacity, wrongful death, loss of guidance and companionship, and other damages, injuries, and consequences that are integrally related to the incidents alleged, all caused by the Defendants, and each of them.

## FEDERAL CLAIMS

**FIRST CAUSE OF ACTION**
**Violation of Civil Rights**
**42 U.S.C. Sections 1983:**
**Use of Excessive Force**
**(Against All Defendants)**

56. Plaintiff hereby realleges and incorporates by reference the allegations in the foregoing Paragraphs as if fully set forth herein.

57. Federal Law 42 U.S.C. §1983 provides in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress".

**Fourth Amendment Claim Excessive Force**

58. "The Fourth Amendment protects individuals from the government's use of excessive force while detaining or arresting individuals." *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006). "When determining whether police officers have employed excessive force in the arrest context, the Supreme Court has instructed that courts should examine whether the use-of-force is objectively reasonable "in light of the facts and circumstances confronting them, without regard to the officers' underlying intent or motivation." *Jones*, 465 F.3d at 61. Among the most relevant facts and circumstances to ascertain "reasonableness" are (1) the severity of the crime

allegedly committed; (2) the threat of danger to the officer and society; and (3) whether the suspect was resisting or attempting to evade arrest.

59. Factor 1 – the severity of the crime allegedly committed. The severity of the alleged crime, Miles' attempt to exit his garage with his infant child in his arms to accept Costello's invitation to speak with his mother is non-violent and without threat of serious bodily injury.

60. Factor 2- The threat of danger to the officer and society. There was absolutely no threat to the police as Miles was attempting to exit the front of his garage, in his socks and with R.D. in his arms, into his driveway to meet with his mother for an explanation of why the officers were there.

61. Factor 3 – whether the suspect was resisting or attempting to evade arrest. Miles was not under arrest and there was no crime being committed by Miles. Miles had lawful custody of R.D. at the time the officers arrived at his residence, and at the time the Defendant Officers attacked him, Miles was attempting to exit his garage to speak with his mother, as he was told by Costello that "I have your mother coming up."

62. Reasonableness is generally a question of fact. *See McKelvie v. Cooper*, 190 F.3d 58 (2d Cir. 1999). As described above, Defendants inflicted force upon Miles that was objectively excessive and unreasonable. As Miles' rights were otherwise encased, enshrined, and protected by the United States Constitution, Defendants engaged in unreasonable, excessive and illegal force by fatally shooting Miles without cause.

63. Defendants and each of them, caused Terrie Dignean, as Administratrix of the Estate of Miles Dignean, as well as the decedent, to sustain and suffer a spectrum of physical, psychological, emotional injuries including but not limited to, conscious pain and suffering, imminent fear of death, wrongful death, nightmares, insomnia, anxiety, post-traumatic stress, mental and

emotional distress, humiliation, fear, and discomfort, loss of enjoyment of life, inconvenience and protractive suffering, destruction of earning capacity, loss of guidance and support, punitive damages, exemplary damages, and any and all compensatory damages, both present and future, and other damages, injuries, and consequences that are found to be related to the incidents alleged, and any other damages permitted by law, all caused by the Defendants, and each of them.

64. Plaintiff is further informed and believes that the acts and/or omissions of Defendant Officers and DOES 1-10 were intentional, malicious, oppressive and/or done with a conscious or callous disregard for Miles' safety and/or constitutional rights which thereby justifies an award of punitive or exemplary damages in amounts to be determined according to proof.

<u>**SECOND CAUSE OF ACTION**</u>
**Violation Of Civil Rights Laws**
**42 U.S.C. §1983**
**Fourth & Fourteenth Amendment**
**Failure to Intercede**
**(Against Defendant Officers and DOES 1-10)**

65. Plaintiff hereby realleges and incorporates by reference the allegations in the foregoing Paragraphs as if fully set forth herein.

66. By their conduct and under color of state law, Whitney, Costello, Sabari, and DOES 1-10 had opportunities to intercede on behalf of Miles to prevent his assault, battery, false imprisonment, excessive force, and deprivation of liberty without due process of law, but, due to their intentional conduct and/or reckless or deliberate indifference, declined or refused to do so.

67. Defendant Officers and DOES 1-10's failure to intercede violated Miles' clearly established constitutional right to be free from unreasonable search and seizure and not to be deprived of liberty without due process of law as guaranteed by the Fourth and Fourteenth Amendments.

68. No reasonable police officer and/or supervisory staff in or after 2020 (George Floyd) would have believed that failing to intercede to prevent these Defendants from undertaking Miles' assault, battery, false imprisonment, and excessive force, was lawful.

69. Given the circumstances of the presence of R.D., Defendant Officers, and DOES 1-10's intentional refusal to intercede renders their failure to intervene even more egregious and abominable.

70. The conduct of Defendant Officers' and DOES 1-10 violated clearly established constitutional rights of which all Defendant Officers, supervisors, chief of police, and sheriffs knew, or of which reasonable police officers, supervisors, chief of police and sheriffs should have known, rendering them liable to Plaintiff under 42 U.S.C. § 1983 without recourse to qualified immunity.

71. Defendant Officers and DOES 1-10 acted with reckless and callous indifference to Miles' Fourth Amendment and Fourteenth Amendment rights.

72. The denial of constitutional rights is irreparable injury per se, and Plaintiff is entitled to declaratory relief.

73. As a direct and proximate result of the actions of Defendants and each of them, caused Terrie Dignean, as Administratrix of the Estate of Miles Dignean, as well as the decedent, to sustain and suffer a spectrum of physical, psychological, emotional injuries including but not limited to, conscious pain and suffering, imminent fear of death, wrongful death, nightmares, insomnia, anxiety, post-traumatic stress, mental and emotional distress, humiliation, fear, and discomfort, loss of enjoyment of life, inconvenience and protractive suffering, destruction of earning capacity, loss of guidance and support, punitive damages, exemplary damages, and any and all compensatory damages, both present and future, and other damages, injuries, and

consequences that are found to be related to the incidents alleged, and any other damages permitted by law, all caused by the Defendants, and each of them.

74. Plaintiff is further informed and believes that the acts and/or omissions of Defendant Officers and DOES 1-10 were intentional, malicious, oppressive and/or done with a conscious or callous disregard for Miles' safety and/or constitutional rights which thereby justifies an award of punitive or exemplary damages in amounts to be determined according to proof.

### THIRD CAUSE OF ACTION
**Violation Of Civil Rights Laws**
**42 U.S.C. §1983**
**Deliberate Indifference to Medical Needs**
**Fourteenth Amendment**
**(Against Defendant Officers and DOES 1-10)**

75. Plaintiff hereby realleges and incorporates by reference the allegations in the foregoing Paragraphs as if fully set forth herein.

76. As set forth above, Defendant Officers and DOES 1-10 were deliberately indifferent to Miles' medical condition by their failure to provide access to timely and appropriate medical care despite shooting him two times in the back.

77. The extent to which these Defendant Officers and DOES 1-10 disregarded Miles required urgent and specialized care is underscored by the collective decision by the Defendants to put Sabari onto an ambulance ahead of Miles for a cut over her eye while Miles was allowed to languish on the floor of his garage while suffering from two gunshot wounds.

78. Defendant Officers and DOES 1-10 conduct was so grossly incompetent, inadequate, and excessive as to shock the conscience, and were so intolerable to fundamental fairness.

79. The denial of constitutional rights is irreparable injury per se, and Plaintiff is entitled to declaratory relief.

80. The conduct of Defendant Officers and DOES 1-10 violated clearly established constitutional rights of which all Defendant Officers, supervisors, chief of police, and sheriffs knew, or of which reasonable police officers, supervisors, chief of police and sheriffs should have known, rendering them liable to Plaintiff under 42 U.S.C. § 1983 without recourse to qualified immunity.

81. As a direct and proximate result of the actions of Defendant Officers and DOES 1-10, caused Terrie Dignean, as Administratrix of the Estate of Miles Dignean, as well as the decedent, to sustain and suffer a spectrum of physical, psychological, emotional injuries including but not limited to, conscious pain and suffering, imminent fear of death, wrongful death, nightmares, insomnia, anxiety, post-traumatic stress, mental and emotional distress, humiliation, fear, and discomfort, loss of enjoyment of life, inconvenience and protractive suffering, destruction of earning capacity, loss of guidance and support, punitive damages, exemplary damages, and any and all compensatory damages, both present and future, and other damages, injuries, and consequences that are found to be related to the incidents alleged, and any other damages permitted by law, all caused by the Defendants, and each of them.

82. Plaintiff is further informed and believes that the acts and/or omissions of Defendant Officers and DOES 1-10 were intentional, malicious, oppressive and/or done with a conscious or callous disregard for Miles' safety and/or constitutional rights which thereby justifies an award of punitive or exemplary damages in amounts to be determined according to proof.

## FOURTH CAUSE OF ACTION
### Violation Of Civil Rights Laws
### 42 U.S.C. §1983
### Liberty Interest Fourteenth Amendment
### (Against Defendant Officers and DOES 1-10)

83. Plaintiff hereby realleges and incorporates by reference the allegations in the foregoing Paragraphs as if fully set forth herein.

84. Plaintiffs' § 1983 substantive due process claim is based on the right to be free from wrongful government interference with familial relationships and to companionship, society, and support.

85. "[T]he Fourteenth Amendment guarantees a substantive right under the Due Process Clause to intimate familial association." *Gorman v. Rensselaer Cnty.*, 910 F.3d 40, 47 (2d Cir. 2018). To state a § 1983 "intimate association" claim, plaintiffs must allege: (1) conduct "so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection;" and (2) that the "state action was specifically intended to interfere with the family relationship."

86. Plaintiff has a Liberty interest under the Fourteenth Amendment of the U.S. Constitution to body integrity, health and safety. Plaintiff has a 14th Amendment Liberty interest to make decisions about her child, Miles Dignean, and grandchild, R.D.'s, health and safety.

87. Defendant Officers and DOES 1-10, and each of them, stole, deprived, and took away Plaintiff, Terrie Dignean as Administratrix of the Estate of Miles Dignean's, liberty interest rights by disregarding their own knowledge and instruction that Terrie be present, along with a representative of Liberty during any interaction with Miles that required the presence of the police.

88. The released clips of the bodycam video by the New York State Attorney General's Office, prior to Costello's initial use of physical force against Miles, Costello, Whitney, and Sabari can be seen luring and pinning Miles and R.D. into the back of their garage and can be heard advising Miles that "I have your mother (Terrie) coming up" to assist them. Miles responds by agreeing that he will speak with her and says to Costello, "let's go then." From there, instead of allowing Miles and his child, R.D., to exit the garage and meet with his mother in the driveway, Costello, Whitney and Sabari move to pin Miles and R.D. in the back of the garage and initiate a physical confrontation, including hand strikes, kicks, knee strikes, deployment of a taser and two gunshots to Miles' back. All while R.D. was screaming for his father and being bumped, grabbed at, and pushed around by the individual officers.

89. Despite Terrie's strenuous attempts to follow the advice of the Oswego County Sheriff's Department by involving a counselor present to assist with Miles on March 21, 2025, and despite the knowledge of Whitney, Costello, and Sabari that Terrie was working to have a counselor present with her when the police went to serve Miles with a Family Court Order, and despite the apparent knowledge of Costello that the presence of Terrie and a counselor would be a deescalating factor, as evidenced by his instruction to Miles that "I have your mother coming up," and despite the premeditated knowledge that his interaction with Miles would turn violent, as evidenced by Whitney's instruction the previous evening to K.N. that he did not want her or Terrie present because he anticipated the interaction with Miles to become violent, the Defendant Officers and DOES 1-10 blatantly disregarded Plaintiff's 14th Amendment Rights.

90. Defendant Officers and DOES 1-10 violated the 14th Amendment rights of Plaintiff. Plaintiff suffered damages, injuries and harm as hereinabove alleged.

91. Wherefore, Plaintiff prays for judgment as more fully set forth below.

## FIFTH CAUSE OF ACTION
### Monell Claim: 42 U.S.C. § 1983
### (Against Defendants Oswego County& New York State Police)

92. Plaintiff hereby realleges and incorporates by reference the allegations in the foregoing Paragraphs as if fully set forth herein.

93. At the time of Miles' death, Defendant Officers and DOES 1-10 were acting under color of all the laws and regulations of the State of New York and the County of Oswego. Oswego County and the New York State Police have a policy, custom, practice and pattern of conduct in place that enables it agents and employee police officers to act with deliberate indifference to the constitutional rights of individuals. This policy, custom, practice and pattern of conduct, includes, but is not limited to, tolerating misconduct by its police officers, encouraging misconduct by failing to adequately supervise, discipline and train its police officers.

94. Plaintiff asserts that Oswego County and the New York State Police are liable for any constitutional torts committed by the individual Defendant Police Officers because they individually maintain a custom, policy and pattern and practice of failing to exercise reasonable care in training, supervising and hiring its officers. Plaintiff further alleges that Oswego County and the New York State Police maintain a custom, policy, pattern and practice of inaction regarding disciplining police officers for constitutional violations; and a custom, policy, practice and pattern of failing to discipline their Police Officers for violating the constitutional rights of its citizens. Plaintiff also alleges that Oswego County and the New York State Police have inadequate guidelines for conducting arrests, the use-of-force necessary for arrests, officer demeaner, and use of  de-escalation tactics. Oswego County and the New York State

Police's policy, custom, practice and pattern were a motivating factor causing a deprivation of Miles' constitutional rights.

95. Oswego County and the New York State Police have an urgent need for a clear policy regarding use-of force. Plaintiff requests a Declaratory Judgment that Oswego County and the New York State Police's policies on use-of-force are inadequate and present a clear and present danger of deprivation of the constitutional rights of persons who have contact with Oswego County and the New York State Police.

96. Under Monell, local governments and their agencies can be sued as "persons" under § 1983 and may be liable where a government policy or custom gives rise to a constitutional deprivation. A "custom" does not require official sanction; instead, a custom "may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law."[3] Thus, the elements of a Monell claim include: 1) an official policy or custom that, 2) causes the plaintiff to be subjected to, 3) a deprivation of a constitutional right.[4]

97. An "official policy or custom" can be shown in several ways: (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing municipal policies related to the particular deprivation in question; (3) a practice so consistent and widespread that it constitutes a custom or usage sufficient to impute constructive knowledge of the practice to policymaking officials; and (4) a failure by

---

[3] *Board of County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) To make a claim for municipal liability, it is not sufficient to allege merely conduct attributable to the municipality. *Id.* "A plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Id.
[4] *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1987).

policymakers to train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come in contact with the municipal employees.[5]

98. The record of this case, based on investigation, research, complaints submitted to Oswego County and the New York State Police, as well as records, newspaper reports of claims of excessive use-of-force by the Oswego County Sheriff's Department and the New York State Police shows a pattern, practice, custom and policy by in failing to respect, uphold and enforce the constitutional rights of the citizens of Oswego County and State of New York. Oswego County and the New York State Police's failure to discipline, train and supervise the police officers under their command has resulted in the excessive use-of-force and civil rights violations of Miles, and many, many other law-abiding citizens of Oswego County and the State of New York. Defendants' actions and inactions as the government officials responsible for establishing municipal policies related to discipline, training and supervising Oswego County Sheriff's Deputies and New York State Troopers has been the motivating factors in the deprivations of Miles' constitutional rights, as well as many other victims of police misconduct in Oswego County and State of New York.

99. Oswego County and the New York State Police's inactions, resulting in a policy of inaction, a policy of lack of supervision, and a policy of lack of training for his police officers in how to protect the constitutional rights of citizens was a direct and proximate cause of the violation of Miles' constitutional rights as stated herein. The Oswego County Sheriff's Department and the New York State Police's policy, custom and practice of inaction, lack of discipline and lack of training of his officers led Defendant Officers to use excessive force against Miles.[6]

---

[5] *Dorsett-Felicelli v. C'nty of Clinton*, 371 F. Supp. 2d 183, 194 (N.D.N.Y. 2005); *Pembaur v. Village of Cincinnati*, 475 U.S. 469, 483-84 (1986); *Village of Canton v. Harris*, 489 U.S. 378, 388 (1989)).
[6] https://www.investigativepost.org/2026/01/28/new-york-state-troopers-face-light-discipline-for-serious-misconduct/

100. Evidence of the Oswego County and the New York State Police's custom, policy practice of excessive force and failure to discipline its officers will be presented after discovery in this action.

101. There is ample evidence to create a jury question regarding whether, from the top down, the Oswego County and the New York State Police took an unduly permissive attitude toward its officers' use-of-force prior to, and in the wake of, the incident..." *Hulett*, 2017 WL 2333712, at *25; see also *Fiacco v. City of Rensselaer*, 783 F.2d 319, 328 (2d Cir. 1986) ("whether or not the claims had validity, the very assertion of a number of such claims put the City on notice that there was a possibility that its police officers had used excessive force."). A reasonable jury could conclude that the Oswego County Sheriff's Department and the New York State Police's "subordinate officers felt empowered to use force with relative impunity and that, as a result, used excessive force on plaintiff in this case." *Hulett v. City of Syracuse* 253 F. Supp. 3d 462, 500-502 (N.D.N.Y. 2017).

102. Therefore, Defendants Don Hilton, Oswego County and the New York State Troopers are liable to Terrie Dignean, as Administratrix of the Estate of Miles Dignean and Miles, for directly and proximately causing violations of his United States Constitutional Rights and resulting in economic and non-economic damages.

103. WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

### SIXTH CAUSE OF ACTION
**Violation of United States Civil Rights Laws**
**42 U.S.C. Section 1983:**
**Negligent Hiring, Training, Supervision & Retention**
**(Against Defendants Oswego County and New York State Police)**

104. Plaintiff hereby incorporates the allegations contained in the preceding paragraphs as though fully set forth herein.

105. Defendants Oswego County and the New York State Police maintain a custom, policy and pattern and practice of negligently failing to exercise reasonable care in training, supervising, disciplining and hiring its officers.

106. Oswego County and the New York State Police have a duty to conduct training, disciplining, hiring, retention, and supervision of its officers so its agents and employees will protect and serve, rather than violate the very laws, including the United States Constitution, that they are sworn to uphold. Oswego County and the New York State Police breached, and are still breaching, this legally imposed duty by allowing its sheriff deputies to engage in lawless behavior and conduct, including terrorizing the citizens of Oswego County and State of New York.

107. Plaintiff further alleges that Oswego County and the New York State Police each maintain a custom, policy, pattern and practice of inaction regarding the disciplining of police officers for excessive use-of-force; and a custom, policy, practice and pattern of failing to discipline its police officers for violating the constitutional rights of its citizens. Plaintiff also alleges that Oswego County and the New York State Police provide inadequate training regarding the lethal use-of-force, which fails to draw a bright line that clearly defines constitutional violations for lethal use-of-force policy. Oswego County and the New York State Police's policy, custom, practice and pattern were a motivating factor in causing a deprivation of Miles' constitutional rights and causing all of their injuries, damages and harms.

108. WHEREFORE, Plaintiff pray for judgment as hereinafter set forth.

**STATE CLAIMS**

**SEVENTH CAUSE OF ACTION**
**Violation New York State Law**
**Intentional Infliction of Emotional Distress**
**(Against All Defendants)**

109. Plaintiff hereby realleges and incorporates by reference the allegations in the foregoing Paragraphs as if fully set forth herein.

110. Under New York law, "to prevail on a cause of action for intentional infliction of emotional distress, a plaintiff must prove four elements: (1) extreme and outrageous conduct; (2) intent to cause, or disregard for the substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress."

111. Defendant Officers inflicted objectively excessive and unreasonable lethal use-of-force tactics upon Miles, thereby causing him severe emotional and physical injuries that resulted in his death. Defendant Officers', specifically Whitney's unreasonable, unwarranted and knee jerk deployment of his firearm without cause or fear of serious bodily harm of Miles and R.D. can most reasonably be construed as extreme and outrageous conduct that should not be tolerated in a civilized society and is not tolerated in our society by police officers who serve as public servants.

112. WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

## EIGHTH CAUSE OF ACTION
**Violation New York State Law**
**Negligent Training, Hiring, Retention, Discipline & Supervision**
**(Against All Defendants)**

113. Plaintiff hereby incorporates the allegations contained in the preceding paragraphs as though fully set forth herein.

114. Oswego County and the New York State Police maintain a custom, policy, pattern and practice of negligently failing to exercise reasonable care in training, supervising and hiring its officers.

115. Defendants Oswego County and the New York State Police have a duty to conduct training, hiring, retention, and supervision of its officers in order that they, as agents and employees, will protect and serve, rather than violate the very laws and rights, including the United States Constitution, that they are sworn to uphold. Defendants Oswego County and the New York State Police breached, and still breaches this legally imposed duty by allowing its officers to engage in lawless behavior and conduct, including terrorizing the citizens of Oswego County and State of New York.

116. Plaintiff further alleges that Oswego County and the New York State Police maintain a custom, policy, pattern and practice of inaction regarding the disciplining of police officers for excessive force, false arrests, illegal seizures, and providing medical care; and a custom, policy, practice and pattern of failing to discipline its Police Officers for violating the constitutional rights of its citizens. Plaintiff also alleges that Oswego County and the New York State Police have an inadequate policy, which does not clearly draw a bright line defining constitutional violations for excessive force, false arrests, and providing medical care. Defendant Oswego County and the New York State Police's policy, custom, practice and

pattern were a motivating factor in causing a deprivation of Miles' constitutional rights and causing all of his injuries, damages and harms.

117. WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

**NINTH CAUSE OF ACTION**
**Violation New York State Law**
**Assault and Battery**
**(Against All Defendants)**

118. Plaintiff hereby incorporates the allegations contained in the preceding paragraphs as though fully set forth herein.

119. Plaintiff alleges that Defendant Officers assaulted him. "[T]he test for whether a plaintiff can maintain . . . a cause of action against law enforcement officials [for assault] is whether the force used was 'reasonable,' the exact same test as the one used to analyze a Fourth Amendment excessive force claim." Defendant Officers used unreasonable force against Miles.

120. Plaintiff alleges that Defendant Officers battered him. "[T]he test for whether a plaintiff can maintain . . . a cause of action against law enforcement officials [for battery] is whether the force used was 'reasonable,' the exact same test as the one used to analyze a Fourth Amendment excessive force claim." Defendant Officers used unreasonable force against Miles.

121. The undisputed facts are that Defendant Officers assaulted and battered Miles, causing him permanent damages as hereinabove alleged. Defendant Officer's conduct was intentional, malicious, fraudulent, and shows a reckless disregard of the constitutional rights, safety and health of Miles. Defendant Officer's conduct warrants punitive damages to protect the public in an amount according to proof.

122. WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

## TENTH CAUSE OF ACTION
**Violation New York State Law
False Imprisonment
(Against All Defendants)**

123. Plaintiff hereby incorporates the allegations contained in the preceding paragraphs as though fully set forth herein.

124. Upon their arrival at Miles' residence on March 21, 2025, the officers lured him into a conversation about his motorcycles. Once Miles was off-guard and relaxed, the Defendant Officers deceived Miles by conning him into the back of the garage where they ambushed him.

125. Body worn camera footage of the incident reveals that Miles was aware that he was being ambushed in his garage and he tried to escape into the safety of his driveway where he could wait for his mother, as Costello stated: "I have your mother coming up."

126. Instead of being allowed to peacefully exit the garage into the driveway to meet with his mother, as promised by Costello, Whitney, Costello and Sabari used an excessive amount of force upon Miles and R.D. in an attempt to keep him pinned in the back of his garage where they could physically overpower him and R.D.

127. Miles and R.D. became alarmed by the ambush upon them that unfolded, and as they tried to retreat into the driveway to speak with Terrie, as promised by Costello, the Defendant Officers began to unleash violence upon them that ultimately resulted in the shooting death of Miles.

128. The undisputed facts are that Defendant Officers falsely imprisoned Miles in the back of his garage, resulting in permanent damages as hereinabove alleged. The Defendant Officer's conduct was intentional, malicious, fraudulent, and shows a reckless disregard of the constitutional rights, safety and health of Miles. Defendant Officer's conduct warrants punitive damages to protect the public in an amount according to proof.

129. WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

## ELEVENTH CAUSE OF ACTION
### Violation New York State Law
### Wrongful Death
### (Against All Defendants)

130. Plaintiff hereby incorporates the allegations contained in the preceding paragraphs as though fully set forth herein.

131. The incident, injuries, and damages to the decedent, Miles Dignean, resulting therefrom were caused solely by the negligence of the Defendants without any comparative fault of the Plaintiff.

132. Defendants were negligent, grossly negligent, careless and reckless in the performance of their job, duties, management, entrustment, and/or use of the aforesaid service weapon in violation of laws, statutes, policies and ordinances. Defendants engaged in negligent, grossly negligent, and reckless conduct by: failing to use the reasonable duty of care expected from a police officer empowered by the laws of the State of New York and Oswego County; in failing to exercise due care and caution to exercise the care expected of a police officer to avoid using lethal force unless absolutely necessary; in failing to observe that degree of caution, prudence and care which was reasonable and proper under the controlling circumstances; and was otherwise negligent, careless and reckless.

133. The limited liability provisions of CPLR§1601 do not apply pursuant to one or more of the exceptions of CPLR§1602.

134. The decedent Miles, as survived by his minor child, R.D., parents and a sibling, all of whom were dependent upon decedent for support, future support, love and affection and in every way a member of the family is expected to be a support to their other family members, and were, prior to the death of the decedent, being supported by him, and expected to be supported in the

future by him, in a manner, befitting the family of a person of the decedent's age, means and future potential.

135. At the time of his death, decedent was 33 years of age, in good health, of good habits, able, intelligent and capable of earning a substantial future income. Decedent worked a full-time job. Decedent, in the future, would have accumulated a substantial estate for his family, had he not died as a result of the shooting on March 21, 2025.

136. By reason of the Defendant Officer's negligence, gross negligence, carelessness and recklessness, decedent Miles experienced severe shock, fright, terror, pain and suffering from the time the Defendant Officers began to punch, kick, strike, tase and shoot a service weapon into Miles' back and while he lied dying on the floor of his garage in front of his minor child and until the time of his death.

137. Aforesaid shock, fright, terror, pain, and suffering were caused solely by the reason of the Defendant Officer's negligence and gross negligence.

138. By reason of Defendant Officer's negligence, gross negligence, carelessness and recklessness, decedent suffered pain and suffering as well as death.

139. As a direct result of the Defendant Officer's improper actions, the decedent's family have been deprived of decedent's support and maintenance, advise, guidance and counsel all to their damage and pecuniary loss.

140. WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

## TWELFTH CAUSE OF ACTION
### Violation New York State Law
### Punitive Damages
### (Against All Defendants)

141. Plaintiff hereby incorporates the allegations contained in the preceding paragraphs as though fully set forth herein.

142. Plaintiff seeks punitive damages for the protection of the community against Defendants in the amount of $36,000,000 per each Defendant.

### THIRTEENTH CAUSE OF ACTION
**Violation New York State Law**
**Respondeat Superior**
**(Against All Defendants)**

143. Plaintiff hereby incorporates the allegations contained in the preceding paragraphs as though fully set forth herein.

144. Plaintiff claims that Oswego County and the New York State Police are liable under the theory of respondeat superior for Defendant Officers and DOES 1-10's excessive force, assault and battery and wrongful death violations of Miles' state and federal Constitutional rights and other violations of Plaintiff's rights. Municipalities may be held vicariously liable for state law torts committed by police officers under a theory of respondeat superior. *See Williams v. Village of White Plains,* 718 F. Supp. 2d 374, 381 (S.D.N.Y. 2010). Therefore, the respondeat superior claim against Oswego County and the New York State Police regarding Defendant Officers and DOES 1-10 is a valid claim, establishing liability against Oswego County and the New York State Police.

### PRAYER FOR RELIEF

1. For special and economic damages, including lost future wages, for all claims

2. For general and non-economic damages for all causes of action;

3. For damages against all Defendants, individually and severally for physical, psychological, emotional injuries including but not limited to, conscious pain and suffering, imminent fear of death, wrongful death, nightmares, insomnia, anxiety, post-traumatic stress, mental and emotional distress, humiliation, fear, and discomfort, loss of enjoyment of life, inconvenience and protractive suffering,

destruction of earning capacity, punitive damages, exemplary damages, and any

and all compensatory damages, both present and future, and other damages,

injuries, and consequences that are found to be related to the incidents alleged,

and any other damages permitted by law, all caused by the Defendants, and each

of them, as claimed herein,

4.      For punitive damages of $36,000,000.00  for all claims against Defendant

Officers, Whitney, Costello, and Sabari and DOES 1-10, in their individual

capacity for the protection of the public;

5.      For pre-judgment and post-judgment interest at the prevailing legal rate;

6.      For costs of the suit including reasonable attorney's fees;

7.      An order declaring that Defendant Officers and DOES 1-10 used excessive force

against Miles.

8.      An order declaring that Oswego County and the New York State Police have

inadequate policies and procedures to prevent Excessive Force to protect the

constitutional rights of individuals and citizens who come in contact with

members of the Oswego County Sheriff's Department and the New York State

Police.

9.      For such other and further relief, including injunctive relief, as the Court may

deem proper.

Dated: February 17, 2026                    RESPECTFULLY SUBMITTED,

RYDER LAW FIRM
Jesse P. Ryder, Esq.
6739 Myers Road
East Syracuse, NY 13057
Tel: (315) 382-3617
Fax: (315) 295-2502
ryderlawfirm@gmail.com

ATTORNEY FOR PLAINTIFF